UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | 2:21-CR-67 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AMANDA BROOKE POTTER and | ) | |
| JAMES RAY SAUCEMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION**

Before the Court are Defendants' Motions to Suppress Evidence [Docs. 49 & 50] in which they seek the suppression of all evidence seized or otherwise resulting from the search of 56 Quail Ridge Lane Greeneville, TN 37743 conducted on June 10, 2021. The United States filed a Response in Opposition to Defendants' Motions [Doc. 59]. The Court conducted an evidentiary hearing on the motions on January 25, 2022. Defendant Amanda Brooke Potter ("Potter") and her counsel, Douglas L. Payne, Esq., Defendant James Ray Sauceman ("Sauceman") and his counsel, David L. Leonard, Esq., along with Assistant United States Attorney Andrew Cheatham Parker, Esq. were present for the hearing. Greene County Sheriff's Department Drug Task Force Agent Ricky Graham ("Agent Graham") testified at the hearing.

This matter is before the Court pursuant to 28 U.S.C. § 636(b) and the standing orders of the District Court for a Report and Recommendation. For the reasons stated herein, the undersigned **RECOMMENDS** that the Motions to Suppress [Docs. 49 & 50] be **DENIED**.

## I.    BACKGROUND

On July 13, 2021, a federal grand jury returned an Indictment [Doc. 3] against Defendants charging both of them with one (1) count of conspiracy to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. § 846, 841(b)(1)(A); one (1) count of using and maintaining a dwelling for the purpose of distributing a controlled substance in violation of 21 U.S.C. § 856(a)(1); one (1) count of possession with the intent to distribute, aided and abetted by each other, of 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); 18 U.S.C. § 2 and *Pinkerton v. United States*, 328 U.S. 640 (1946) [*Pinkerton* liability]; and charging Sauceman with one (1) additional count of possession with intent to distribute five grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substances in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Defendants filed the instant Motions [Docs. 49 & 50] on December 9, 2021, arguing primarily that the search warrant issued for the search of the residence located at 56 Quail Ridge Lane Greeneville, Tennessee was not supported by probable cause. Sauceman also argues that he did not consent to the search of the residence [Doc. 50, p. 1].

Additionally, Sauceman's Motion contained a request for a *Franks* hearing, which was orally adopted by Potter during the evidentiary hearing addressing these motions. While the Court finds that Defendants did not make the necessary showing to entitle them to a *Franks* hearing, in order to have a clear record regarding the nature of the lockers that were searched the Court determined it would take testimony from Agent Graham.

## II.     FINDINGS OF FACT

Agent Graham testified that he conducted a search of 56 Quail Ridge Lane Greeneville, Tennessee on June 10, 2021, after obtaining a search warrant to do so. Agent Graham stated that prior to the issuance of the search warrant, two other officers, Sergeant Mark Crum and Deputy Eric Rollyson, had conducted a limited search of the 56 Quail Ridge Lane premises. According to Agent Graham, the officers had come to the premises looking for a vehicle which had been involved in an unspecified incident. When those officers arrived, two individuals fled inside the residence. Agent Graham further testified that Defendant Sauceman gave the officers permission to enter the residence to search for the two individuals who had fled inside. During this limited search, officers opened a set of green lockers located in the on-suite bathroom of Defendants' bedroom in which a small quantity of methamphetamine and some drug paraphernalia was found.

Although the lockers had the outward appearance of being divided into relatively small sections, Agent Graham testified that in his experience it is not uncommon for objects that look small on the outside to be modified so that a person can fit inside. For example, Agent Graham stated he has seen recliners or box springs that have the interior components removed so a person can hide inside. Additionally, he has seen people hide in spaces such as the inside of washing machines and dryers, freezers, and small cabinets. As such, Agent Graham testified that it was reasonable to think the lockers might have been modified to remove the interior dividers so a person could hide inside. Agent Graham was unsure of whether the lockers were opened before or after the two people police were searching for had been located, but he said that they may also have been opened for officer safety.

Agent Graham confirmed that the affidavit in support of an application for a search warrant he submitted to Third Judicial Circuit Judge Thomas Wright alleged that Sauceman is known to reside at 56 Quail Ridge Lane and has a criminal history for sale and/or delivery of illegal drugs. Agent Graham stated that he did not personally conduct the records check on Sauceman, instead relying upon the document provided to him by support staff. A copy of Sauceman's NCIC criminal history report was admitted as Exhibit 4.

### III.    ANALYSIS

#### a.  Showing Required for *Franks* hearing

To be entitled to a Franks hearing challenging the validity of a search warrant, a defendant must first make a substantial preliminary showing "that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit…" *United States v. Bateman*, 945 F.3d 997, 1007 (6th Cir. 2019).  Even if a defendant can show that the affiant made an intentional or recklessly false statement or omission, he must further demonstrate that the false statement or material omission was necessary to the finding of probable cause. *Id.* Sauceman alleges that there are two intentionally or recklessly false statements in the affidavit in question submitted by Agent Graham.

First, Sauceman takes issue with the statement in the affidavit that Sauceman "has a criminal history for sale and/or delivery of illegal drugs." Sauceman argues that based upon the Pretrial Services report prepared in this case he had merely been convicted of solicitation.[1] Sauceman's counsel argues that solicitation is an inchoate offense, and that Sauceman's record does not reflect any convictions for sale or delivery. Sauceman's Pretrial Services report was not

---

[1] Defense counsel did not refer to the specific offense for which Defendant was convicted but implied during the hearing that it was solicitation to sell or possess illegal drugs.

entered as an exhibit during the hearing, but as noted above, Sauceman's NCIC report was offered into evidence. The NCIC report reflected an arrest for "Sale/Delivery of Schedule II Drug" on April 22, 2010. Additionally, the NCIC report did not reflect any "solicitation" offenses.[2] Agent Graham was able to review Sauceman's NCIC report prior to preparation of his affidavit, and it was reasonable for him to form a belief based upon the information in that report that Sauceman had a "criminal history for sale and/or delivery of illegal drugs." Such a statement was neither intentionally nor recklessly false when made based upon the information available in Sauceman's NCIC record. Additionally, the Court notes that Sauceman's argument is based upon the convictions reflected in his Pretrial Services report, a document that did not exist at the time of the search and, even if it had, Agent Graham would not have had access to as it is prepared for court use only.

Sauceman also argues that Agent Graham falsely stated in his affidavit that a person could reasonably be assumed to have hidden inside the lockers officers searched. While it is true that the lockers at issue appear from the outside to be divided into relatively small compartments which would not permit an individual to fit inside, it is not unreasonable to believe the interior dividers could have been removed in a manner not easily detectible from the outside to create a larger interior space which would in fact be big enough to hide a person. Sauceman failed to make a substantial showing that either of the statements in the affidavit with which he takes issue were either intentionally or recklessly false; therefore, he has failed to make the showing necessary to entitle him to a *Franks* hearing.[3]

---

[2] The NCIC report does reflect a charge of "Party to the Offense of Sch II" on September 18, 2011, which may be the solicitation offense to which Sauceman's counsel was referring.

[3] Because Sauceman did not satisfy the first requirement for entitlement to a *Franks* hearing, it is not necessary to analyze whether the statements at issue were necessary to the determination of probable cause.

### b. Probable Cause for Issuance of Search Warrant

Both Defendants argue that probable cause did not support the issuance of the search warrant for 56 Quail Ridge Lane. "Probable cause for a search warrant exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "With great deference toward the issuing judge's determination, federal courts examine the affidavit's four corners to determine whether, under the totality of the circumstances, the low bar of probable cause has been overcome." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021). Additionally, in reviewing the sufficiency of a search warrant affidavit, the court is to consider "whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny." *United States v. Redden*, 471 F. App'x 492, 493 (6th Cir. 2012) (quoting *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)).

Here, the affidavit in question states that the Greene County Sheriff's Department has answered multiple calls for service to 56 Quail Ridge Lane, resulting in more than 10 arrests and the recovery of stolen property. The affidavit further alleges that Sauceman is a known resident of that address and has a criminal history for sale and/or delivery of illegal drugs, which is supported by the arrest for Sale/Delivery of Schedule II reflected on Sauceman's NCIC report. The affidavit detailed a drug purchase by a confidential informant at the residence and numerous calls and complaints from anonymous sources, neighbors, and Greene County Sheriff Wesley Holt regarding suspicious activity at the property. While there is no specific information contained in the affidavit about Agent Graham's knowledge of the reliability of those making the complaints, these complaints did not exist in a vacuum. Instead, they followed a long period of confirmed illegal activity at the property demonstrated by the 10 arrests that had occurred on the premises.

Finally, the warrant details an incident from earlier on June 10, 2021, during which officers arrived at 56 Quail Ridge Lane to look for a suspect vehicle in an unrelated incident. When they arrived, two unknown individuals ran inside the home. Additionally, another person, Nick Malone, was sitting on the front steps of the residence with a needle and container of methamphetamine beside him. Sauceman granted permission for officers to enter the home to look for the individuals who ran inside. Inside the home, officers located Chris Hinkle in a bedroom closet with 2 containers of methamphetamine. Additionally, officers observed drug paraphernalia in plain view inside the home. Defendants contend that the needles and bong constituting the paraphernalia are not illegal to possess and as a result, are insufficient to provide probable cause to conclude that illegal substances would likely be found on the premises. Again, these items cannot be considered in a vacuum but instead in the context of the multiple people found to be in possession of illegal substances on the premises the day the paraphernalia was found. Additionally, the affidavit provided that more drug paraphernalia and a substance that appeared to be methamphetamine were found when officers opened a set of green lockers in the master bedroom/bathroom area.

Taken as a whole, the information in the affidavit is sufficient to establish probable cause to believe illegal drugs and other items associated with the sale and use of illegal drugs would be present in the residence. The Court notes that although it would have been appropriate for officers to open the lockers at issue while searching for the two individuals who ran inside the house, officers would not have been entitled to look inside them once the individuals in question were secured, as any search after that point exceed the limited scope of the search to which Sauceman had consented. It is not entirely clear from the record before the Court whether the lockers were searched before or after the individuals at issue were located. However, even if the items found in the lockers were excluded from consideration, the affidavit still contained enough information to

support a finding of probable cause and issuance of the search warrant. Moreover, the Court finds it unnecessary to suppress the items found in the lockers because even if they had not been discovered prior to the issuance of the search warrant, they would have inevitably been discovered upon execution of the warrant. *See United States v. Bowden*, 240 F. App'x 56, 61 (6th Cir. 2007) ("The Supreme Court and our circuit have applied the doctrine [of inevitable discovery] in several cases where, like this one, a potentially illegal search was followed by a search conducted in accordance with a valid search warrant premised on evidence of probable cause developed independently of the initial search.").

### c. Good Faith Exception

Although the Court has already determined the search warrant was supported by probable cause, even without the inclusion of the items discovered inside the lockers, the Court will go one step further and address the application of the good faith exception to the exclusionary rule. In *United States v. Leon*, the Supreme Court created the good faith exception to the exclusionary rule for evidence seized in "reasonable, good faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. 897, 905 (1984). To determine whether the good faith exception applies, the court considers "whether a reasonably well-trained officer would have known that the search warrant was illegal despite the magistrate's authorization." *United States v. Ward*, 967 F.3d 550, 554 (6th Cir. 2020) (quoting *Leon*, 468 U.S. at 922, n. 23). The good faith exception does not apply where the search warrant is supported by a "bare bones" affidavit that is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* To avoid being "bare bones," an affidavit must provide more than unsupported suspicions or conclusions and make some connection between illegal activity and the place to be searched. *Id.*

(citing *United States v. Christian*, 925 F.3d 305, 312-13 (6th Cir. 2019)). This assessment is made based upon a holistic reading of the affidavit and the totality of the circumstances. *Id.*

As stated in the section above, the affidavit described a long history of illegal and suspicious activity taking place at this residence, coupled with the plain-view discovery of drug paraphernalia and the arrest of two individuals in possession of narcotics at the residence the day the warrant was requested. Such an affidavit does not fit the description of "bare bones," as a well-trained officer would have had no reason to think a warrant to be improperly issued based upon this affidavit. The affidavit provided specific details that were related to the items sought, close in time to the date the warrant was requested and based upon reports and sources Agent Graham reasonably believed to be trustworthy and reliable. Admittedly, there were events described in the affidavit which were more remote in nature, but they were coupled with recent events and were provided to give context to those recent events as opposed to themselves providing probable cause. As such, even if the warrant had not been supported by probable cause, applying the good faith exception to the exclusionary rule would be appropriate in this case; therefore, the items seized, and evidence obtained as a result of the warrant's execution would be admissible. This includes the evidence discovered in the home as well as that discovered in Potter's body cavity. For the same reasons, Potter's statement to law enforcement officers would not be subject to suppression.

## IV.    CONCLUSION

For the reasons outlined above, the undersigned RECOMMENDS that Defendants' Motions to Suppress [Docs. 49 & 50] be **DENIED**. [4]

Respectfully Submitted,

/s Cynthia Richardson Wyrick
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party.  Fed. R. Crim. P. 59(b)(2).  Failure to file objections within the time specified waives the right to review by the District Court.  Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order).  The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).