UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:21-CR-00067-DCLC-CRW |
| | ) | |
| vs. | ) | |
| | ) | |
| AMANDA BROOKE POTTER and | ) | |
| JAMES RAY SAUCEMAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Report and Recommendation of United States Magistrate Judge Cynthia R. Wyrick filed on January 27, 2022, recommending that this Court deny the Motions to Suppress filed by Defendants Amanda Brook Potter and James Ray Sauceman [Doc. 62]. For the following reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [Doc. 62] and **DENIES** Defendants' Motions to Suppress [Docs. 49, 50].

**I.    BACKGROUND**

On July 13, 2021, a federal grand jury indicted Defendants, charging them both with one count of conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), one count of using and maintaining a dwelling for the purpose of distributing a controlled substance in violation of 21 U.S.C. § 856(a)(1), one count of possession with intent to distribute, aided and abetted by each other, of 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), 18 U.S.C. § 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946), and charging Defendant Potter with an additional count of possession with

1

intent to distribute five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), all arising from a June 10, 2021 incident [Doc. 3].

Defendants subsequently filed Motions to Suppress [Docs. 49, 50]. The Government responded in opposition [Doc. 59]. The Magistrate Judge held a hearing on January 25, 2022, at which Agent Ricky Graham ("Agent Graham") from the Greene County Sheriff's Department Drug Task Force testified. The Magistrate Judge subsequently filed her report, recommending Defendants' motions be denied [Doc. 62]. Defendants filed timely objections to the Magistrate Judge's Report and Recommendation [Docs. 65, 67]. Thereafter, Defendant Sauceman signed a plea agreement pursuant to Fed.R.Crim.P. 11(c)(1)(C) [Doc. 81] and his change of plea hearing is currently set for March 23, 2022.

Defendants do not object to the basic facts outlined in the Magistrate Judge's Report and Recommendation, but they do object to the findings and legal conclusions related to those facts. After reviewing the record before the Court and finding the facts to be consistent with the Magistrate Judge's Report and Recommendation, the Court **ADOPTS BY REFERENCE** the facts as set out in the Report and Recommendation [Doc. 62, pgs. 3–4] *See United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2013). The Court will refer to the facts only as necessary to analyze the issues raised on objection.

II.  DISCUSSION

Pursuant to Federal Rule of Criminal Procedure 59, "[a] district judge may refer to a magistrate judge for recommendation a defendant's…motion to suppress evidence." Fed.R.Crim.P. 59(b)(1). Within fourteen days after being served with a copy of the Report and Recommendation, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed.R.Crim.P. 59(b)(2). This Court must conduct a *de novo* review of

2

those portions of the Report and Recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). "The district court is not required to review…'any issue that is not the subject of an objection.'" *Brown v. Bd. Of Educ.*, 47 F. Supp. 665, 674 (W.D. Tenn. 2014) (quoting *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

Defendants seek the suppression of all evidence seized or otherwise resulting from the June 10, 2021 search of the residence at 56 Quail Ridge Lane. Defendants argue in their objections that the Magistrate Judge erred in finding that (1) the officers did not exceed the scope of consent for the initial search and, even if they did, the doctrine of inevitable discovery applied to the evidence discovered; (2) Agent Graham's affidavit provided sufficient probable cause for the issuance of a search warrant; and (3) even if the search warrant was not supported by probable cause, the good faith exception to the exclusionary rule applied. Defendant Sauceman additionally objects to the Magistrate Judge's determination that he failed to make the necessary showing for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The Court reviews *de novo* each of Defendants' objections in turn.

A.  **Initial Search**

Defendants seek to suppress evidence found in a locker during the initial warrantless search of the Quail Ridge Lane residence. Specifically, Defendants argue that Defendant Sauceman gave officers consent to search the residence for two individuals who ran inside as the officers arrived and, in conducting that search, the officers exceeded the scope of consent by searching green school-style lockers in Defendants' bathroom, where they discovered drug paraphernalia and a container of what appeared to be methamphetamine [Doc. 66, pg. 8; Doc. 67, pg. 7].

3

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "[A] search conducted without a warrant issued upon probable cause is per se unreasonable…subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quotation marks and citations omitted). Consequently, evidence acquired as a result of a warrantless search is inadmissible pursuant to the exclusionary rule, unless an exception applies. *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995).

One exception, relevant here, is a search predicated on consent. *Id*. However, the scope of a consensual search is limited to areas in which the item could reasonably be found. *Id*. When the item to be found is a person, such as in fugitive sweeps, the search may only extend to "a cursory inspection of those spaces where a person may be found." *Maryland v. Buie*, 494 U.S. 325, 335, (1990). Defendants argue the search of the lockers exceeded the scope of consent because (1) it was not reasonable for officers to believe that a person could hide in the lockers and (2) it is alleged that the individuals who were the target of the search were apprehended prior to the search of the lockers [Doc. 66, pg. 8; Doc. 67, pg. 7]. Thus, Defendants contend the evidence discovered inside the locker must be suppressed.

The lockers at issue are moderately tall, standing at approximately five or five and a half feet tall [Doc. 49-2; Doc. 68, pg. 18]. From the outside, the lockers appear to be divided into small upper and lower sections [Doc. 49-2]. However, Agent Graham testified that, in his experience, it would be reasonable for officers to believe the lockers could have been modified to remove the interior dividers to allow a person to fit inside [Doc. 62, pg. 3]. In *Buie*, a landmark case

4

concerning protective sweeps, Justice Brennan discussed in his dissenting opinion places officers might search when looking for individuals and included within that list "closets, *lockers*, chests wardrobes, and cars[.]" 494 U.S. at 342 (Brennan, J., dissenting) (emphasis added). The Fourth Circuit examined similar facts and found that if the doors of the "internally partitioned locker" were closed, "there can be no question that the locker comes within the ambit of *Buie*." *United States v. Lay*, 182 F.3d 911 (4th Cir. 1999).

Upon examination of the lockers at issue here [Doc. 49-2] and in light of Agent Graham's testimony, it would be reasonable for officers to believe that, absent the interior dividers, a person could hide inside the lockers. Thus, the officers did not exceed the scope of consent during the initial search by conducting "a cursory inspection of those spaces where a person may be found." *Buie*, 494 U.S. at 335. However, as Defendants alternatively argue and as the Magistrate Judge found, a search of the lockers likely exceeded the scope of consent if officers opened the lockers *after* apprehension of the individuals who were the target of the search. *See Id*. at 333 (holding that once the defendant was found, "there was no longer [a] particular justification for entering any rooms that had not yet been searched."). Agent Graham testified he was not sure whether officers opened the lockers after the individuals had been located [Doc. 62, pg. 3]. Defendant Potter asks the Court to refer this matter back to the Magistrate Judge for additional fact finding on the issue [Doc. 66, pg. 4]. However, the Court does not find any additional fact finding necessary.

Regardless of whether the officers exceeded the scope of consent, another exception to the exclusionary rule applies. That exception—the inevitable discovery doctrine—applies when "the evidence in question would inevitably have been discovered without reference to the police error or misconduct[.]" *Nix v. Williams*, 467 U.S. 431, 448 (1984). The government must "establish by

5

Case 2:21-cr-00067-DCLC-CRW   Document 82   Filed 03/22/22   Page 5 of 13   PageID #: 262

a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[.]" *Id*. at 444.

Defendants argue the inevitable discovery doctrine is inapplicable [Doc. 66, pgs. 8–9; Doc. 67, pg. 10]. In support, Defendants assert there are no facts indicating either that the officers conducting the initial warrantless search had any intent to seek a search warrant in the future or when Agent Graham formed his own intent to seek a search warrant for the residence [Doc. 66, pg. 10]. Despite the subjective intent of the officers, the question in determining the applicability of the inevitable discovery doctrine is whether "evidence discovered during an illegal search would have been discovered during a later legal search and the second search inevitably would have occurred in the absence of the first." *United States v. Keszthelyi*, 308 F.3d 557, 574 (6th Cir. 2002); *see also Kennedy*, 61 F.3d at 499–500 (clarifying that "an alternate, independent line of investigation is not required for the inevitable discovery exception to apply.").

Here, shortly after the initial search, officers obtained and executed a search warrant for controlled substances and other items relating to the sale or distribution of controlled substances at the Quail Ridge Lane residence [Doc. 50-1 pgs. 3–4]. The drug paraphernalia and methamphetamine in the locker would have been discovered during this subsequent search. Additionally, for the reasons stated below with respect to the validity of the search warrant, the search pursuant to the warrant "inevitably would have occurred in the absence of" the search of the lockers. *Keszthelyi*, 308 F.3d at 574. This is because the affidavit contains sufficient probable cause for the issuance of the search warrant, even excluding the contents of the locker. Therefore, the contents are admissible, as they fall within at least one exception to the exclusionary rule, and Defendants' objections to the Magistrate Judge's findings on the issue are **OVERRULED**.

6

## B. Search Warrant Validity

The Fourth Amendment provides, in relevant part: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. In determining whether an affidavit provides probable cause, "the issuing magistrate" must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit…there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This Court's duty "is simply to ensure that the magistrate had a 'substantial basis for…conclud[ing]' that probable cause existed." *Id*. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). In reviewing the "sufficiency of the evidence supporting probable cause," the Court "is limited to the information presented in the four corners of the affidavit." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)

Here, the affidavit provides the following information to support the belief that illegal drugs, specifically methamphetamine, were present in the Quail Ridge Lane residence: (1) over the course of three years, officers responded to multiple calls for service at the residence, resulting in over 10 arrests and the recovery of stolen property; (2) Defendant Sauceman, a known occupant of the residence, had a criminal history for the sale and/or delivery of illegal drugs; (3) a confidential information purchased methamphetamine in the driveway of the residence approximately 20 months prior; (4) for roughly one year, agents received phone calls from anonymous sources, neighbors, and the Sheriff regarding ongoing traffic at the residence at all hours and complaints from neighbors about suspicious people stopping at their houses; (5) on the date of the search, officers observed an individual on the steps of the residence with a needle and a container of what appeared to be methamphetamine; (6) officers observed bongs and needles in

plain view inside the residence; (7) officers found an individual in a closet with two bags of what appeared to be methamphetamine; and (8) officers discovered drug paraphernalia and a container of what appeared to be methamphetamine in a locker in the bathroom [Doc. 66-1].

Defendants argue, among other things, that the affidavit provided no facts to allow the issuing magistrate to evaluate the credibility of the anonymous sources and neighbors; mere reports that people are acting suspicious are not grounds for probable cause to search; the information regarding service calls to the residence and the controlled buy in the driveway is outdated; there is no information connecting the Defendants to the service calls and arrests or the controlled buy; and bongs and needles are not *per se* illegal to possess [Doc. 66, pgs. 6–8; Doc. 67, pgs. 7–10]. While each of the foregoing fragments of information, when isolated from one another, may be insufficient to support a finding of probable cause, the Court must review the affidavit "in a commonsense—rather than a hypertechnical—manner," and "consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citing *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)).

Here, considering the totality of the circumstances, the affidavit contains sufficient information to demonstrate a fair probability that illegal drugs or items connected to the sale and/or use of illegal drugs would be found at the Quail Ridge Lane residence. This is true even excluding the information regarding the contents of the locker. As to the prior service calls and arrests, the controlled buy, and the anonymous calls and neighbor complaints regarding a high volume of traffic and suspicious activity, each of these taken together or alone may arguably be insufficient to establish probable cause due to the passage of time and/or lack of reliability or credibility. However, this information must be considered along with the remaining facts contained in the

affidavit. *See United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) ("The inclusion of outdated information has been insufficient to render an entire affidavit stale when the affidavit as a whole establishes that the criminal activity in question is ongoing and continuous[.]").[1]

In addition to the background information, the following averments must be considered: (1) officers believed a known occupant of the residence had a criminal history for the sale and/or delivery of illegal drugs; (2) individuals fled into the residence when officers arrived; (3) officers observed an individual on the steps outside the residence with a needle and what appeared to be methamphetamine; (4) officers observed drug paraphernalia—bongs and needles—inside the residence in plain view; and (5) officers found another individual in a bedroom closet with methamphetamine. These facts, in conjunction with the history of criminal and suspicious activity at the residence, demonstrate such criminal activity is likely ongoing and continuous. It is logical to conclude, based on the foregoing, that there is a fair probability that illegal drugs or evidence of the use or sale of illegal drugs would be found at the residence. As a result, the issuing magistrate "had a 'substantial basis for…conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. at 238–39 (quoting *Jones*, 362 U.S. at 271). Accordingly, Defendants' objections to the Magistrate Judge's findings regarding the validity of the search warrant are **OVERRULED**.

### C. Good Faith Exception

Even if the Court were to accept Defendants' arguments that the affidavit does not provide a substantial basis for a finding of probable cause, that does not end the inquiry. The Supreme

---

[1] Defendants' argument that the affidavit does not contain any information connecting them to the prior service calls and arrests or the controlled buy is immaterial, considering search warrants are aimed at a particular place rather than a particular person. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978) ("Search warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized.").

9

Court in *United States v. Leon* created an exception to the exclusionary rule allowing "the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. 897, 905 (1984). In determining whether the "good faith exception" applies, Courts consider "'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Savoca*, 761 F.2d 292, 294–95 (6th Cir. 1985) (quoting *Leon*, 468 U.S. at 923 n.23).

In *Leon*, the Supreme Court listed various "paradigmatic situations in which" no reasonable officer could believe that a warrant was properly issued. *Id*. at 296. Relevant here is the situation in which the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–611 (1975) (Powell, J., concurring in part)). Affidavits with such deficiencies "have come to be known as 'bare bones' affidavits." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005).

Defendants argue that the good faith exception does not save the otherwise deficient search warrant here, and the Magistrate Judge erred in so finding [Doc. 66, pg. 11; Doc. 67, pg. 12]. Specifically, Defendants categorize the affidavit as bare bones and contend that it is based upon stale allegations and was prepared only after officers intentionally exceeded the scope of consent during the initial warrantless search [Doc. 66, pg. 11; Doc. 67, pg. 13]. Defendant Potter further asserts, "[l]ittle thought went into the preparation of the search warrant." [Doc. 66, pg. 11]. Thus, Defendants argue that a reasonably well-trained officer would have recognized the absence of sufficient authority for the search.

As an initial matter, the subjective intent or beliefs of the officers is irrelevant. *See Savoca*, 761 F.2d at 295 (reiterating that the good-faith inquiry is objective and "subjective beliefs are not

10

Case 2:21-cr-00067-DCLC-CRW    Document 82    Filed 03/22/22    Page 10 of 13    PageID #: 267

to be considered."). Nonetheless, if the officers in fact exceeded the scope of consent during the initial search, Defendants offer no basis in the record to support the assertion that the officers did so intentionally. Moreover, even excluding any evidence discovered from a search conducted outside the scope of consent, the remaining facts, as a whole, provide a sufficient indicium of probable cause.

The affidavit includes information regarding prior criminal activity at the Quail Ridge Lane residence, complaints of suspicious activity at the residence, Agent Graham's personal knowledge that an occupant of the residence had a criminal history for the sale and/or delivery of illegal drugs, the confirmed discovery of drug paraphernalia inside the residence, and officers' encounters with at least two individuals possessing drug paraphernalia and/or methamphetamine at the residence. Although some of the facts in the affidavit may properly be characterized as "suspicions, beliefs, or conclusions," the remainder of the affidavit contains "underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). Viewing Agent Graham's averments as a whole, they simply do not combine to produce a bare bones affidavit such that a reasonably well-trained officer would have believed the search was illegal.

At this point, two judicial officers—the issuing magistrate and the Magistrate Judge—have reviewed the affidavit and found that it contained sufficient indicia of probable cause. For the reasons set out above, this Court finds no reason to conclude otherwise. Therefore, even if the affidavit lacked sufficient probable cause for the issuance of the warrant, officers conducting the search relied in good faith on what they reasonably believed to be an otherwise properly issued warrant. Therefore, the good-faith exception applies and Defendants' objections to the Magistrate Judge's findings as to the same are **OVERRULED**.

### D. *Franks* Hearing

Finally, Defendant Sauceman challenges statements in Agent Graham's affidavit and argues he is entitled to an evidentiary hearing on the issue. Specifically, Defendant Sauceman challenges Agent Graham's averments that (1) he "has a criminal history for sale and/or delivery of illegal drugs" and (2) during the June 10, 2021 warrantless search, "[w]hile checking for persons in places a person could reasonably be assumed to hide, officers found a cabinet with what appeared to be drug paraphernalia and a container of methamphetamine." [Doc. 66-1, ¶¶ 3, 6].

A defendant challenging the validity of a search warrant affidavit is entitled to an evidentiary hearing if he (1) "makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit" and (2) "proves that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013) (citing *Franks*, 438 U.S. at 171–72). A defendant raising such a challenge "bears a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019).

As to the statement regarding his criminal history, Defendant Sauceman argues the Pretrial Services Report prepared in this matter shows he has merely been convicted of the inchoate offense of solicitation and his record does not reflect any convictions for sale or delivery of illegal drugs. As the Magistrate Judge found, Agent Graham reasonably relied on Defendant Sauceman's NCIC report, which listed an arrest for "Sale/Delivery of Schedule II Drug" on April 22, 2010 [Doc. 62, pg. 5]. Additionally, Agent Graham did not have access to Defendant's Pretrial Services at the time he prepared the affidavit, as it did not exist and, even if it did, it would be restricted to court use only. Based on the foregoing, Defendant Sauceman has failed to show Agent Graham

"knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit" with respect to his criminal history. *Rose*, 714 F.3d at 370.

Turning to the statement concerning the cabinet, Defendant Sauceman "denies that any such cabinet exists" and refers the Court to the pictures submitted as exhibits to Defendant Potter's Motion to Suppress as support for his position [Docs. 49-2, 49-3]. It is unclear whether Defendant Sauceman genuinely disputes the existence of a cabinet or simply challenges the veracity of the statement that it is a place a person could reasonably be assumed to hide. With respect to the former, it is apparent that the word "cabinet" is referring to the green lockers, which are also the focus of the pictures attached to Defendant Potter's motion. As to the latter, the Court discussed above that it would be reasonable to believe that the lockers could be modified to allow a person to hide in them. Moreover, as also discussed above, the contents of the locker or "cabinet" are not "necessary to the probable cause finding in the affidavit." *Rose*, 714 F.3d at 370.

Based on the foregoing, Defendant Sauceman has failed to meet the "heavy burden" of challenging the validity of the search warrant, *Bateman*, 945 F.3d at 1008, and his objections to Magistrate Judge's findings on the issue are **OVERRULED**.

### III. CONCLUSION

Upon consideration of Defendants' Objections [Docs. 65, 67] and the Magistrate Judge's Report and Recommendation [Doc. 62], and for the reasons stated herein, it is hereby **ORDERED** that the Report and Recommendation [Doc. 62] is **ADOPTED** and Defendants' Motions to Suppress [Docs. 49, 50] are **DENIED**.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge